UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No. CV 22-8439-MWF (PLAx)** **Date: February 15, 2023**
Title: Philip Smith v. Ryan Compton et al

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:
Rita Sanchez

Court Reporter:
Not Reported

Attorneys Present for Smith:
None Present

Attorneys Present for Defendant:
None Present

**Proceedings (In Chambers):** ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT NOËL ANDREWS'S MOTION TO STRIKE THE FIRST AMENDED COMPLAINT AND REQUEST FOR SANCTIONS [10]; DENYING WITHOUT PREJUDICE DEFENDANT RYAN COMPTON'S MOTION TO DISMISS PURSUANT FRCP 12(B)(2) [15]

Before the Court are two motions:

The first is Defendant Noël Andrews's Special Moton to Strike the First Amended Complaint ("FAC") pursuant to California Civil Procedure Section 425.16 and Request for Sanctions (the "MTS"), filed on December 9, 2022. (Docket No. 10). Plaintiff Philip Smith filed an Opposition as well as Evidentiary Objections on January 5, 2023. (Docket Nos. 12 and 14). Smith also filed a separate Declaration in support of his Opposition (the "MTS Smith Decl.") on January 9, 2023. (Docket No. 18). Andrews filed a Reply to the Opposition, a Response to the Evidentiary Objections, and Evidentiary Objections to the MTS Smith Declaration. (Docket Nos. 20, 21, 26).

The second is Defendant Ryan Compton's Motion to Dismiss for Lack of Jurisdiction Pursuant to Federal Rule 12(b)(2) (the "MTD"), filed on January 5, 2023. (Docket No. 15). Smith filed an Opposition and Declaration on January 23, 2023. (Docket Nos. 22 and 23). Compton filed a Reply, Request for Judicial Notice (RJN), and Evidentiary Objections, on January 30, 2023. (Docket No. 25).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No. CV 22-8439-MWF (PLAx)** **Date: February 15, 2023**
Title: Philip Smith v. Ryan Compton et al

The Court has read and considered the papers filed in connection with the Motions and held a hearing on **February 13, 2023.**

The Court rules as follows:

- The Motion to Strike is **DENIED** except as to paragraph 36 as to Andrews, to which the Motion is **GRANTED**. Paragraph 36 is the only allegation in the FAC that Andrews establishes as encompassing protected activity under the anti-SLAPP statute. Because the allegation in that paragraph involves publicly posted messages regarding Smith's claimed violent, criminal, and sexually abusive history, it concerns a matter of public interest and Smith has failed to demonstrate a likelihood of prevailing on claims based on that allegation because he offers no facts to support the implicit assertion that Andrews is responsible for the posting of the messages. However, that allegation alone does not form the sole basis of any of the 16 claims stated in the FAC, and therefore the Motion does not successfully obtain dismissal of any of claims.

- The parties' requests for attorney fees based on the MTS is likewise **DENIED** because Andrews is not a prevailing party under the statute, and although not successful, the MTS was not entirely frivolous as to warrant awarding fees to Smith.

- The Motion to Dismiss for lack of personal jurisdiction is **DENIED** ***without prejudice***. The uncontroverted allegations in the FAC and Smith's declaration, if true, are sufficient to establish a prima facie case of specific jurisdiction. But given the grounds for jurisdiction are intertwined with the merits and with the parties' respective credibility, the Court will defer a final ruling on the issue until trial on the merits.

- Defendant Compton's unopposed Request for Judicial Notice regarding filings in other state court actions is **GRANTED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No. CV 22-8439-MWF (PLAx) Date: February 15, 2023**
Title: Philip Smith v. Ryan Compton et al

- The Court also notes that each party has lodged various evidentiary objections. Many of the objections are garden variety evidentiary objections based on lack of foundation, speculation, relevance, and hearsay. While these objections may be cognizable at trial, on the relevant motions, the Court is concerned only with the ***admissibility*** of the relevant ***facts***, and not the ***form*** of these facts as presented in the Motions. Accordingly, to the extent that the Court relies upon evidence to which the parties object, the objections are **OVERRULED**. To the extent the Court does not, the objections are **DENIED *as moot***.

## I. BACKGROUND

### A. Facts Relevant to Andrews MTS

Smith is a commercial artist, musician, and entrepreneur. (FAC ¶ 14). As of 2021, Smith had worked with and had ongoing relationships with numerous bands, musicians, production companies, and other music industry personnel throughout Los Angeles and California. (*Id.*). Smith also created promotional materials for various artists and published several of his own artworks. (*Id.* ¶ 16). Smith created, sold, and traded content in the NFT ("non-fungible token") art market. (*Id.* ¶ 17). Additionally, according to the FAC, Smith founded the "Goldfinch Guitars" brand line of electric guitars that are marketed and sold throughout the United States. (*Id.* ¶ 19). In California, Goldfinch Guitars are marketed in one retail location, at Caveman Vintage Music in Los Angeles, which is a "well reputed and exclusive music store featuring high-end vintage instruments." (*Id.*).

The FAC involves 16 claims against three different Defendants. Smith and Defendant Andrews were previously romantically involved and have a child together. (*Id.* ¶5). Smith and Defendant Compton have been associated with each other socially and professionally for many years. (*Id.* ¶ 3). Smith and Defendant Vogel were previously romantically involved. (*Id.* ¶ 7). Smith alleges that Defendants are all familiar with each other and have been in contact with each other as a result of their relationships with Smith. (*Id.* ¶ 8).

As a result of their relationships, Smith alleges that Defendants have detailed information about Smith's personal history that they have exploited. (*Id.* ¶¶ 3,5). Smith alleges that Defendants have acted in concert to engage in a smear-campaign designed to harm Smith's reputation and to harass and humiliate him. (*Id.* ¶ 23). Smith alleges that Defendants have stolen Smith's identity and impersonated him on Internet websites, in email and social media communications, and over the telephone. (*Id.* ¶ 24).

The messages that Defendants sent, either while impersonating Smith or to Smith contacts, were allegedly false, misleading, and damaging. (*Id.* ¶ 36). In particular, Defendants have sent or publicly posted messages stating that Smith is "abusive, violent in nature had committed violence against women including rape, was a "predator" who stalks and abuses women, was dishonest, a heroin dealer, and possibly murderous." (*Id.*). These messages were distributed to Smith's "family, friends, and customers and colleagues in the music and art industries." (*Id.* ¶ 66).

Smith also alleges that Defendants sent messages to Smith including death threats, tracked and published information about his movements, hacked Smith's Dropbox account to destroy Smith's files, accessed other Internet accounts owned by Smith, and hacked Smith's private electronic communications and messages. (*Id.* ¶¶ 39-42). Further, Smith alleges that Defendants obtained and posted an audio recording of a private argument between Smith and Defendant Andrews during their child custody dispute. (*Id.* ¶ 32). Smith also further alleges that Defendant Andrews has the financial wherewithal to fund the alleged conspiracy between Defendants. (*Id.* ¶ 57).

Moreover, Smith alleges that Defendants established a YouTube profile called "Philip Smith Fan Archive Channel" which had content that was made to appear as though it was from Smith himself or that he endorsed it. (*Id.* ¶ 29). Smith states that Defendant Compton submitted a written statement to YouTube affirming that he had created the profile and posted much of the content. (*Id.* ¶ 29).

According to Smith, he has suffered significant emotional, reputational, and economic damages. (*Id.* ¶ 47).

Based on the above allegations, Smith alleges sixteen claims for relief: (1) invasion of privacy; (2) invasion of privacy – false light; (3) misappropriation of name/sobriquet; (4) online false impersonation (Cal. Pen. Code § 528.5(e)); (5) defamation – libel; (6) intentional infliction of emotional distress; (7) conversion; (8) violation of Copyright Act (17 U.S.C. § 501(a) *et. seq.*); (9) violation of Computer Fraud and Abuse Act (18 U.S.C. §1030, *et. seq.*); (10) trespass to chattel; (11) intentional interference with contractual relationship; (12) negligent interference with contractual relationship; (13) intentional interference with prospective economic advantage; (14) negligent interference with prospective economic advantage; (15) misappropriation of trade secrets (Cal. Civ. Code §§ 3426.1, *et. seq.*) and (16) civil RICO violation (18 U.S.C. § 1961, *et. seq*.).

### B. Jurisdictionally Relevant Facts as to Compton's MTD

In addition to the above allegations in the FAC, Smith also submits a declaration in further support of his Opposition to the MTD based on personal jurisdiction, detailing conduct that he believes is specifically attributable to Compton, that connects Compton to California. Below the Court lists the most relevant of the statements made in Smith's declaration as follows:

- Smith declares that he knows that Compton has the technical ability to carry out many of the allegations in the FAC based on his long friendship with Compton, during which he has witnessed Compton remotely hack a computer, voicemail boxes, and email accounts of people he has animus towards. (Declaration of Philip Smith ("MTD Smith Decl.") ¶ 6).
- Smith claims some of the statements and messages sent to him and his colleagues and friends (as alleged in the FAC) include facts or details which are only known to Compton. For example, one of the email account names used to send negative statements about Smith was "jjennyanytime." That refers to a joke shared only by Smith and Compton about a pet Smith had as a teenager. (*Id.*).
- Smith also details Compton's strong animus toward him. (*Id.* ¶ 8).

- Additionally, Smith claims that while he was a California resident, Smith started getting notifications that an Instagram page "peter.van.art" was tagging him in posts. In 2021, Smith lived in a van for a few months in Los Angeles and the profile picture used by "peter.van.art" resembles the van Smith lived in. Smith contends that the profile contains disparaging posts about Smith, which are tagged at locations where Smith has lived in California, and locations where he has previously visited with Compton. The profile also contains comments disparaging Smith's business (which he carries out in California) stating "goldfinches are trash." (*Id.* ¶¶ 15-16).
- The account named "peter.van.art" began following Instagram accounts of people in California, who followed Smith's business account for Goldfinch Guitar, and has commented on some of those California residents' pages. Some of Smith's Goldfinch Guitar customers who live and work in California have reached out to Smith about feeling "weirded out" by the way in which "peter.van.art" is interacting with them on Instagram. Because of the other posts from "peter.van.art," Smith believes Compton is behind the "peter.van.art." account and responsible for the messages to California residents. (*Id.* ¶ 18)
- Smith also believes that Compton was responsible for hacking, and permanently deleting all of Smith's files from his Dropbox account in early 2021 while Smith was a resident of Los Angeles. Smith has knowledge of Compton's technical ability to hack his Dropbox. (*Id.* ¶ 22).
- Smith also declares that Compton was responsible for sending messages in the Spring of 2021 to Smith's friends, loved ones, customers, and musicians endorsed by his guitar company, most of whom were in Los Angeles, warning them that Smith was dangerous. For example, Smith alleges that Compton sent an email addressed to his former girlfriend, co-Defendant Vogel, describing him as "a predator," while Vogel lived with Smith in Los Angeles. (*Id.* ¶ 24).
- Further, Smith has seen reddit posts about Smith's company, Goldfinch Guitars, such as a post titled "Goldfinch: We are here when you need to sell your real guitars for heroin," that he believes were posted by Compton. The post on reddit was posted by reddit user "Deep_and_Mcwide," who was

active on the Rowan University reddit board, and located in Glassboro, New Jersey. This is relevant given Compton works at Rowan University and lives in Glassboro. (*Id.* ¶ 26).

In support of the MTD, Compton submits a declaration in which he states that he became friends with Smith in high school and started a LLC with Smith in New Jersey called "Goldfinch Guitars" in 2017. (Declaration of Ryan Compton ("Compton Decl.") ¶ 3). The business lasted less than a year and was dissolved in 2018, but Compton is generally aware that Smith still continues to use the name to do business in California. (*Id.*). Compton explains that he is a New Jersey resident and is employed at Rowan University. (*Id.* ¶ 2). Compton also declares that he has no connection to California and has only visited California once. (*Id.* ¶ 5). He declares that it would be burdensome to litigate this action in California. (*Id.* ¶ 6).

In the Reply, Compton also submits court filings from two other cases brought by Smith against other parties (including one action in state court against co-Defendant to this action, Vogel), in which Smith makes the same or similar allegations against those parties that Smith now attributes to Compton.

## II. DISCUSSION

At the onset, the Court notes that the FAC is a classic example of a shotgun pleading that groups three Defendants together without any differentiation as to each Defendant — which is improper under Rule 8. But because the Motions are not brought under that Rule, the Court has addressed that deficiency only to the extent it applies under the applicable legal tests raised by Defendants.

### A. Motion to Strike

Defendant Andrews moves under California Code of Civil Procedure section 425.16(b)(1) (California's "anti-SLAPP" statute) to strike claims 1-6 and claims 11-14 in the FAC (i.e., invasion of privacy, invasion of privacy, online false impersonation, defamation – libel, intentional infliction of emotional distress, intentional interference

with contractual relationship, negligent interference with contractual relationship, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage). Both Smith and Andrews also seek attorney fees under the same statute.

The anti-SLAPP statute "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001) (holding that discovery provisions of section 425.16 do not apply in federal court). The Court notes that the applicability of the anti-SLAPP statute in federal court has been questioned. *See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 274 (9th Cir. 2013) (Kozinski, C.J., concurring) ("Federal courts have no business applying exotic state procedural rules which, of necessity, disrupt the comprehensive scheme embodied in the Federal Rules, our jurisdictional statutes and Supreme Court interpretations thereof"). Nonetheless, under existing precedent, Smiths have the right to bring their Motion.

Motions brought under the anti-SLAPP statute are evaluated in two steps. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity." *Oasis W. Realty, LLC v. Goldman*, 51 Cal.4th 811, 819, 124 Cal. Rptr. 3d 256 (2011) (internal quotation marks and citation omitted). "If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.* "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended by* 897 F.3d 1224 (9th Cir. 2019).

"Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." *Id.* (emphasis in original). An anti-SLAPP motion may be used to strike allegations of protected activity without defeating an entire claim. *Baral v. Schnitt*, 1 Cal. 5th 376, 393, 205 Cal. Rptr. 3d 475

(2016).

Here, Andrews hardly makes clear precisely what conduct she is claiming to be the protected activity forming the basis of the MTS. In the Opposition, Smith identifies and analyzes nine paragraphs he assumes are the subject of the Motion. In Reply, although still somewhat unclear, Andrews seems to argue that the protected activity is found in paragraphs 24, 29, 34-36, and 55 of the FAC, but explains that she seeks to dismiss claims 1-6 and 11-14 because the FAC incorporates by reference the allegations contained in those paragraphs within each of the claims. Therefore, the Court assumes that the allegations in the above-cited paragraphs from the Reply form the basis of the MTS.

**1. Protected activity**

For Andrews's statements to be protected activity, the statements must have been made in a place open to the public or a public forum in connection with an issue of public interest. Cal. Civ. Proc. Code § 425.16(e)(3).

Andrews contends that the FAC "alleges that Defendants posted numerous messages on internet websites, in email, in social media communications, and in a public website, including messages on YouTube. (MTS at 14) (citing FAC ¶¶ 24, 29, 34, and 55). Andrews goes on to argue that "[s]ince messages on internet websites and social media communications, such as YouTube, constitute statements made in a public forum, the written statements at issue unquestionably constitute statements made in a public forum." (*Id.*).

While the Court agrees that websites "that are accessible to the public are public forums under the anti-SLAPP statute," (*see Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 199, 222 Cal. Rptr. 3d 250 (2017)), Andrews glosses over the inherent difference between publicly accessible social media platforms and private email messages. Andrews does not cite to a single case holding that email messages between private persons constitute a "public forum" under the statute. While the FAC itself is admittedly quite vague in certain respects, and sometimes references "messages" generally without clarifying what forum those messages were posted or exchanged on,

to the extent the FAC does make clear that certain of the allegations are premised on email messages, the Court concludes that anti-SLAPP does not apply. (See ¶¶ FAC 25, 35). But the allegations concerning statements on public websites are public forums, and Smith does not argue otherwise.

However, Smith does dispute whether the information Andrews allegedly posted about Smith is a matter of public interest.

As the Ninth Circuit has recognized, the California appellate courts do not always apply a uniform test to assess whether an activity is a matter of public interest. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 906-07 (9th Cir. 2010) (summarizing test articulated in *Rivero v. American Federation of State, County, & Municipal Employees*, 105 Cal. App. 4th 913, 924 130 Cal. Rptr. 2d 81 (2003) as opposed to "a somewhat more restrictive test" articulated by *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132-1133 2 Cal. Rptr. 3d 385, 392 (2003)). In subsequent cases, it appears that the Ninth Circuit has attempted to synthesize the cases rather than adopt one approach over the other. The synthesized test is as follows:

> The California Court of Appeal for the First District has identified "three categories of public issues: (1) statements concerning a person or entity in the public eye; (2) conduct that could directly affect a large number of people beyond the direct participants; (3) or a topic of widespread, public interest. (citing *Rivero*, 105 Cal. App. 4th at 924). California's Court of Appeal for the Third District has explained that public interest' does not equate with mere curiosity, but instead a matter of public interest should be something of concern to a substantial number of people." ([citing] *Weinberg*, 110 Cal. App. 4th at 1132). Further, there should be some degree of closeness between the challenged statements and the asserted public interest, and the focus of the speaker's conduct should be the public interest. Finally, a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Sarver v. Chartier*, 813 F.3d 891, 901–02 (9th Cir. 2016) (internal citations, quotation marks, and alterations omitted).

The Ninth Circuit has also appeared to adopt the Second District's framing of a public interest as "*any issue in which the public is interested*." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 955 n.4 (9th Cir. 2013) (citing *Nygard, Inc. v. Uusi–Kerttula*, 159 Cal. App. 4th 1027, 1042, 72 Cal. Rptr. 3d 210 (2008)) (emphasis in original).

With those principles in mind, the Court assesses the allegations in the paragraphs seemingly identified by Andrews as the basis of her MTS.

Paragraphs 24 and 29 allege that "Defendants" impersonated Smith on internet websites, in email, social media, and over the phone; including with a specific YouTube Channel titled "Philip Smith Fan Archive." (*See* FAC ¶¶ 24, 29). Paragraphs 34-35 primarily allege, in quite general terms, that Defendants published false information designed to harm Smith's business reputation and to cause him personal stress. (*Id.* ¶¶ 34-35). The only specific allegations provided in the paragraphs cited by Andrews are found within paragraphs 36 and 55. In paragraph 36, Smith alleges that "Defendants" published broadly to the public messages stating Smith "was abusive, violent in nature, had committed violence against women including rape, was a 'predator' who stalks and abuses women, was dishonest, a heroin dealer, and possibly murderous." (*Id.* ¶ 36). In paragraph 55, Smith alleges that Defendants posted messages on public sites frequented by NFT market participants disparaging Smith, claiming he was dishonest or untrustworthy, that he did not pay on the deals he made, and otherwise damaging his reputation. (*Id.* ¶ 55).

Despite citing all of the above allegations, the only actual arguments Andrews advances concern the allegation made in paragraph 36 (i.e., that Defendants publicly posted messages suggesting Smith is violent and guilty of sexual misconduct and other crimes). Therefore, the Court assesses whether the allegations in that single paragraph are protected activity.

The Court concludes that the allegations in paragraph 36, in which three Defendants are alleged to be publicly posting information indicating Smith has committed acts of violence, crime, and sexual misconduct (including rape), are matters of public interest. *See Todd v. Lovecruft*, No. CV 19-01751-DMR, 2020 WL 60199, at *13 (N.D. Cal. Jan. 6, 2020) (holding that "the public has an interest in identifying individuals who commit sexual abuse and accusations of abuse are matters of public concern" for purposes of anti-SLAPP motion because the public has an interest "in specifically identifying individuals believed to have committed misconduct" and such statements "contribute to the discussion surrounding sexual assault because they invite discussion on identifying, responding to, and preventing sexual abuse"); *see also Doe*, 730 F.3d at 955 (concluding that "general topics of gang violence" and "the killing of a gang-affiliated police informant are issues of public interest"); *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 164–65, 1 Cal. Rptr. 3d 536 (2003) (holding that a news report on the "unlawful dispensing of controlled substances is an issue of great public interest").

Smith relies on two cases to argue against such a conclusion. First, Smith cites *Weinberg*, which as noted above, is the California appellate case that the Ninth Circuit has identified as articulating "a more restrictive test" than what appears to be adopted by other California courts and by the Ninth Circuit. In *Weinberg*, the Court of Appeal stated that "false allegations of criminal conduct, made under circumstances like those alleged in this case, are not subject to the anti-SLAPP statute" because otherwise "wrongful accusations of criminal conduct . . . automatically would be accorded the most stringent protections provided by law, without regard to the circumstances in which they were made." *See Weinberg*, 110 Cal. App. 4th at 1136. In other words, contrary to Smith's argument, *Weinberg* explicitly ***rejected*** a per se rule regarding criminal allegations and instead held that an anti-SLAPP motion premised on criminal accusations requires consideration of "the circumstances" in which the allegations are made. *See id.*

And here, consideration of the circumstances makes clear that the alleged facts are distinguishable from *Weinberg*. In *Weinberg*, the plaintiff and defendant were "aficionados of token collecting" and were part of an association known as the

National Token Collectors' Association (the "Token Association"), which published a monthly newsletter. *Id.* at 1127. The Court of Appeal concluded that statements by the defendant made through an advertisement in the token collecting newsletter, that plaintiff had stolen a valuable collector's item from the defendant, did not involve a matter of public interest. *Id.* at 1136. There, the messages were specifically targeted to a specific community given the statements were published in the Token Association's newsletter.

Here, although some of the messages were targeted at Smith's friends and colleagues, Defendants allegedly also posted the relevant messages on YouTube and other social media platforms, which have much broader reach than a niche association's newsletter. And while the *Weinberg* court did emphasize the fact that the defendant "did not report his suspicions [of theft] to law enforcement," to support its conclusion that the statements were not a matter of public interest, this Court does not read *Weinberg* as making police reports a prerequisite for any anti-SLAPP motion based on allegations of criminal conduct. *See Weinberg*, 110 Cal. App. 4th at 1135. In circumstances where the alleged criminal activity involves sexual abuse and/or rape, there are a myriad of well-understood reasons why an individual may not have chosen to take his or her claims to law enforcement (e.g., shame, fear, ridicule, etc.). In such cases, failure to report incidents of sexual misconduct to authorities has little (if anything) to do with the public's interest in the accusation.

Moreover, this is not an instance of a single person accusing another private person of an act of misconduct. Rather, this case involves allegations of ***three*** different Defendants allegedly making the ***same or similar*** accusations about their experience with a single person, who they claim has engaged in serious misconduct including violence, sexual misconduct (including rape), and other crimes. That fact also distinguishes this case from the other case cited by Smith, *Steep Hill Lab'ys, Inc. v. Moore*, No. CV 18-00373-LB, 2018 WL 1242182, at *7 (N.D. Cal. Mar. 8, 2018), *aff'd,* 744 F. App'x 443 (9th Cir. 2018). In *Steep*, a disgruntled former business partner accused the plaintiff of workplace sexual harassment, making the matter a "private workplace dispute," just between two individuals, and not an issue of widespread interest. *Id.* And even though Defendant Andrews denies making the

statements, a defendant who denies engaging in the alleged conduct "may rely on the plaintiff's allegations alone" in assessing whether the conduct at issue is protected activity. *See Abir Cohen Treyzon Salo, LLP v. Lahiji*, 40 Cal. App. 5th 882, 888, 254 Cal. Rptr. 3d 1 (2019).

Ultimately, the Court recognizes that there is tension between the various anti-SLAPP cases involving accusations of crime and sexual misconduct, with courts coming to different conclusions without clearly articulated distinctions. *See Rivero*, 105 Cal. App. 4th at 929 ("[S]ome observers have said that a 'public concern' test amounts to little more than a message to judges and attorneys that no standards are necessary because they will, or should, know a public concern when they see it."). Nonetheless, in this Court's view, the facts here are clearly more similar to those in *Todd* than those in either *Weinberg* or *Steep*, and further, the Court agrees with the *Todd* court's reasoning. Like in *Todd*, the Court concludes that the public has an interest in "identifying individuals who commit sexual abuse and accusations of abuse are matters of public concern" because the public has an interest "in specifically identifying individuals believed to have committed misconduct." *See Todd*, 2020 WL 60199, at *13. Here, by sharing their experiences on a public platform, Defendants have certainly "contribute[d] to the discussion surrounding sexual assault," particularly given the allegations in the FAC are that three different, previously unconnected individuals, have come together in a unified campaign to voice their separate but similar concerns about Smith's misconduct. *See id*. As the *Todd* court reasoned, "[p]ublicly accusing individuals of rape and sexual assault is unquestionably controversial, but the controversy itself serves to demonstrate that it is a matter of public interest and debate." *See id.*

While Smith may ultimately be able to hold Defendants liable if he proves that the allegations are indeed defamatory, that possibility goes to the merits, ***not*** the public interest in the issues being raised in paragraph 36 of the FAC.

The Court must therefore conclude that the allegations in paragraph 36 cover protected activity under the anti-SLAPP statute.

**2. Probability of prevailing**

Smith must next show a probability of prevailing on his claims against Andrews that arise from the allegation in paragraph 36 to defeat the MTS.

The only facts that Smith specifically attributes to Andrews in the FAC are as follows: Andrews formerly had a romantic relationship with Smith and shares a child with Smith; Andrews has information about Smith, his family and friends, his history, and his accounts and businesses; Andrews has financial wherewithal; and a posting of an argument between Smith and Andrews was publicly posted by "Defendants." (FAC ¶ ¶ 5, 32, 57). These allegations alone do nothing to support the allegation that ***Andrews*** is legally responsible for the postings of the allegedly false and/or defamatory statements regarding crime, violence, and sexual abuse in paragraph 36. *See Abir Cohen Treyzon Salo, LLP v. Lahiji*, 40 Cal. App. 5th 882, 889, 254 Cal. Rptr. 3d 1, (2019) (granting the defendant's anti-SLAPP motion and finding that the plaintiffs did not make a "prima facie showing" that the specific defendant "was legally responsible for the postings that underl[ied] their defamation claim" because the posts themselves did not establish that the defendant was the author or poster and there were other indications that the posts were published by another person).

Moreover, in declarations submitted in other state court actions, Smith expressly stated that ***Compton***, not Andrews, was responsible for most (if not all) of the various allegations in the FAC. (*See generally*, MTS, Ex. D (Harassment Action, Declaration of Philip Smith). Smith objects to various paragraphs in his own state court declaration primarily on the grounds of relevance and hearsay. The Court flatly rejects those objections. Smith's state court declaration is clearly relevant as it discusses the precise allegations that are also alleged in the FAC and attributes those allegations solely to Compton. Moreover, as a party admission, the declaration is not hearsay.

The only other argument advanced by Smith is that "even if Andrews were exonerated from posting the statements she would not be absolved of liability" because "Andrews was complicit with the other [D]efendants." (MTS Opp. at 8). However, the only allegation in the FAC to support such a conspiracy theory of liability is

Andrews's ability to finance Defendants' activities. This again is insufficient. Without more, an allegation regarding Andrews's financial wherewithal does not somehow amount to a plausible claim of conspiracy.

Therefore, Smith has not even adequately alleged, let alone presented sufficient evidence, to indicate a probability of proving his allegation that ***Andrews*** posted the allegedly defamatory statements in paragraph 36. Accordingly, the Court **STRIKES** paragraph 36 as to Andrews.

However, the Court notes that no single claim in the FAC is solely dependent on the allegation in paragraph 36. As detailed by Smith in the Opposition, the claims Andrews seeks to strike are not entirely premised on the allegation in paragraph 36. (*See* MTS Opp. 21-25); *see also City of Cotati v. Cashman*, 29 Cal.4th 69, 78, 124 Cal. Rptr. 2d 519 (2002) (noting that the critical question in determining whether the "arising from" protected activity requirement is met "is whether the plaintiff's cause of action itself was ***based on*** an act in furtherance of the defendant's right of petition or free speech") (emphasis in original). Therefore, despite the small victory, Andrews's attempt to dismiss ***10 claims*** based on the protected activity alleged in a single paragraph of the 149-paragraph FAC, must fail.

At the hearing, Andrews's counsel argued that the allegation in paragraph 36 is the gravamen of all of the 10 claims Andrews seeks to strike, and therefore the claims should be dismissed in their entirety. Counsel suggested that the California Supreme Court's opinion in *Baral v. Schnitt*, 1 Cal. 5th 376, 396, 205 Cal. Rptr. 3d 475 (2016) supported Andrews's position. Not so.

*Baral* stands for precisely the opposite contention. In *Baral*, the California Supreme Court made clear that "an anti-SLAPP motion, like a conventional motion to strike, may be used to attack parts of a count as pleaded." *Id.* at 393. The *Baral* court explained that a "single cause of action" may "include more than than one instance of alleged wrongdoing," and in such "mixed cause[s] of action," the same right "may be violated by both protected and unprotected activity." *Id.* at 394. The court further reasoned that "the Legislature indicated that ***particular*** alleged acts giving rise to a

claim for relief may be the object of an anti-SLAPP motion." *Id.* at 395 (emphasis in original); *see also Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1011-1012, 281 Cal. Rptr. 3d 678 (2021) (rejecting contention that because the defendant aimed its motion at an entire cause of action, the court was required to consider "whether the gravamen of the entire cause of action was based on protected or unprotected activity" and instead holding that, to the extent the plaintiff "has alleged various acts as a basis for relief and not merely as background, each act or set of acts must be analyzed separately under the usual two-step anti-SLAPP framework").

As Smith's counsel argued at the hearing, it is clear that no claim for relief in the FAC is entirely based on the allegation that Defendants publicly posted messages indicating that Smith has engaged in rape and murder. For instance, as part of his first claim for invasion of privacy, Plaintiff alleges that Defendants hacked into his personal files and published ***private*** information. (*See* FAC ¶ 60). Further, as part of his third and fourth claims for misappropriation of name and online false impersonation, Smith alleges that Defendants sent messages and payments to his contacts as if they were Smith, and established profiles on dating websites as Smith. (*Id.* ¶¶ 25, 26, 28, and 57).

Even for Smith's second (false flight) and fifth (libel) claims, which are centered on the allegedly false messages posted by Defendants, those claims can be said to arise out of allegations other than the allegation in paragraph 36. For instance, Smith alleges that Defendants posted his browsing history, sent messages falsely disparaging Goldfinch Guitars, saying "the guitars were of very poor quality, that the company was dishonest or a sham," and that Defendants posted messages on social media claiming Smith was untrustworthy and did not pay on his business deals. (*Id.* ¶¶ 37, 40, 55). While Andrews cited some of these paragraphs in her MTS, the only substantive arguments as to the public interest element of an anti-SLAPP motion were aimed at the allegation in paragraph 36 (regarding Smith's alleged violence/sexual misconduct). Because other allegations in the FAC support the claims brought by Smith, the striking of paragraph 36 does not allow the Court to wholesale dismiss any individual claims.

Accordingly, the Motion to Strike is **DENIED** except to the extent it seeks to strike paragraph 36 as to Andrews, as to which the Motion is **GRANTED.**

The Court also **DENIES** both parties' requests for a reward of attorney fees. While the anti-SLAPP statute provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs," here the striking of a single allegation does not make Andrews a prevailing party. *See* Cal. Civ. Proc. Code § 425.16(c)(2); *see also Brown v. Elec. Arts, Inc*., 722 F. Supp. 2d 1148, 1155 (C.D. Cal. 2010) ("[A] party is not considered to have "prevailed" where 'the ***results*** of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion.'") (emphasis in original) (internal citation omitted); *Moran v. Endres*, 135 Cal. App. 4th 952, 956, 37 Cal. Rptr. 3d 786 (2006) ("The results of the motion were minimal and insignificant, fully justifying the court's finding that defendants should not recover fees.").

Although the Court does not view Andrews as the "prevailing party," the Court also does not view the MTS as entirely "frivolous" or "intended to cause unnecessary delay," as would be required to award Smith attorney fees. *See* Cal. Civ. Proc. Code § 425.16(c)(2) ("If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney[][] fees to a plaintiff prevailing on the motion."). While an anti-SLAPP motion was certainly not the most effective vehicle to seek dismissal of the claims in the FAC, the vague nature of Andrews's MTS was driven in large part by the lack of specificity of the FAC itself. Therefore, the Court will not reward Smith with attorney fees.

**B. <u>Motion to Dismiss</u>**

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "Where, as here, [] [D]efendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to

dismiss." *Id.* (internal quotation marks and citations omitted). While "conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor," courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Id.*; *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (citing *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over [non-resident defendants]." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). "California's long-arm statute," Cal. Civ. Proc. Code § 410.10, "allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Id.* Because section 410.10 "is coextensive with federal due process requirements …, the jurisdictional analyses under state law and federal due process are the same." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (internal citation omitted).

There are two varieties of personal jurisdiction based on a defendant's contacts with the forum: general and specific. General jurisdiction, which "permits a court to hear any and all claims against a defendant, whether or not the conduct at issue has any connection to the forum," may only be exercised where a defendant's contacts with the forum are "continuous and systematic." *Ranza*, 793 F.3d at 1069-70 (internal quotation marks and citations omitted). "Specific jurisdiction exists when a case 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Ranza*, 793 F.3d at 1068 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)). In order to be subject to a court's specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

The "purposeful direction" test applies to the first prong of the specific jurisdiction test, where, as here, plaintiffs primarily assert statutory and tort claims. *See Baton v. Ledger SAS*, No. 21-CV-02470-EMC, 2021 WL 5226315, at *5 (N.D. Cal. Nov. 9, 2021). Purposeful direction occurs where the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

defendant knows is likely to be suffered in the forum state." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).

Here, Defendant Compton moves to dismiss for lack of personal jurisdiction. The FAC alleges that Compton is a New Jersey resident, and the MTD Opposition makes clear that Smith only relies on specific, not general, personal jurisdiction. (*See* FAC ¶ 2; MTD Opp. at 6).

Smith's argument for a finding of specific jurisdiction boil down to essentially four allegations: (1) Compton intentionally targeted California residents when he sent them allegedly libelous messages, often while impersonating Smith or through accounts referencing Smith; (2) that Compton intentionally interfered with Smith's business relationships and harmed his reputation with California businesses; (3) that Compton reached out to California to steal or delete files from Smith's computer that he knew was located in California; and (4) that Compton sent him death threats, which prompted Smith to contact the police while Smith lived in California. (MTD Opp. at 4).

In the MTD, Compton argues that Smith's allegations are "nothing more than bare bone allegation[s] that "Defendants" impersonated and/or defamed Smith through hacking into various websites. (MTD at 10). Essentially, Compton's argument is that Smith has failed to establish specific jurisdiction because Smith has improperly relied on group pleading to establish ***Compton's*** specific contacts. Further, relying on a California Court of Appeal opinion, in the Reply, Compton argues that Smith has failed to meet his evidentiary burden because he fails to submit competent and credible evidence to support the facts alleged in the FAC and his declaration. (Reply at 6) (citing *In re Auto. Antitrust Cases I & II*, 135 Cal. App. 4th 100, 110, 37 Cal. Rptr. 3d 258 (2005)).

At the onset, the Court notes that Compton is correct in claiming that Smith cannot establish personal jurisdiction through group allegations aimed at California because "those sorts of 'shotgun' pleadings do not satisfy [a plaintiff's] burden to demonstrate personal jurisdiction with respect to each defendant." *Broidy Cap. Mgmt.,*

*LLC v. Qatar*, No. CV 18-2421-JFW (Ex), 2018 WL 9943552, at *8 (C.D. Cal. Aug. 16, 2018) (citing *Calder*, 465 U.S. at 790) ("Each defendant's contacts with the forum State must be assessed individually."). However, Smith offers a declaration detaling the allegations in the FAC that he attributes to Compton. While, ordinarily in the motion to dismiss context, the Court would not allow Plaintiff to amend his complaint through an Opposition declaration, it is well established that courts may consider such declarations on motions based on personal jurisdiction.

In Smith's MTD declaration, he testifies that he believes Compton engaged in several purposeful acts aimed at California. Smith's belief is based on Smith's personal knowledge of Compton's technical abilities; Compton's knowledge of relevant facts about Smith; Compton's animus towards Compton; and other circumstantial evidence, that collectively lead Smith to believe that Compton is responsible for a range of allegations in the FAC.

In the Reply, Compton makes evidentiary objections to the statements in Smith's declaration but much of the objections go to the form, not the content, of the information and it would be inappropriate at this stage to disregard the declaration where the information could be admissible in a different form. Further, Compton was free to offer his own declaration controverting the allegations of wrongdoing, but Compton's declaration does not in any way address the specific allegations against him, and in some ways, even corroborates Smith's allegations. For example, Compton confirms that he lives in New Jersey and works at Rowan University, and certain posts about Smith were posted from that precise location. (*Compare* Compton Decl. ¶ 2 *with* MTD Smith Decl. ¶ 26).

And while Compton relies heavily on a California case regarding Smith's evidentiary burden, federal law controls on such procedural, and for that matter, constitutional, issues. In federal court, only where there is an evidentiary hearing, "when the plaintiff is put to his full proof, is the plaintiff required to establish the jurisdictional facts by a preponderance of the evidence." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073 (C.D. Cal. 2003). In other words, "[w]here, as here, the motion is based on written materials rather than an evidentiary

hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal citation and quotation marks omitted). In such cases, courts "only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* (citing *Caruth v. International Psychoanalytical Ass'n,* 59 F.3d 126, 128 (9th Cir. 1995)). And "[a]lthough the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Id.*

Beyond the evidentiary burden, Compton argues that Smith lacks credibility because he has made nearly identical allegations against other defendants in other actions in other courts, claiming those defendants are responsible for some of the same acts Smith now accuses Compton of doing. While the Court has judicially noticed the other court filings and does not disagree that there are certain credibility issues to be resolved, the Court concludes that Smith's allegations as to Compton's actions, and Smith's credibility, are part-and-parcel with the merits of this action. The law is clear that "[w]here the jurisdictional facts are 'intertwined with the merits of the action,' determination of the jurisdictional issue may determine the merits of the action," and in such circumstances, it is "preferable" for courts to defer a final jurisdictional ruling until trial. *See Wimbeldon Fund , SPC (Class TT) v. Graybox, LLC*, No. CV 15-6633-CAS (SSx), 2019 WL 2413023, at *5 (C.D. Cal. June 6, 2019) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc*., 557 F.2d 1280, 1285 n.2 (9th Cir. 1977)).

Here, if Smith's allegations as to Compton's conduct are true, there appears to be several sound bases for personal jurisdiction. Smith alleges that Compton reached out and specifically messaged Smith's colleagues and friends that lived in California, sending them disparaging messages about Smith; he alleges that Compton started following Smith's California friends on social media through an account that was meant to impersonate Smith; Smith alleges that Compton made death threats to Smith while he lived in California, which prompted Smith to file a police report with California state officials; Smith further alleges that in certain social media posts on one of the accounts Compton tagged California locations in which Smith lived; further Compton posted messages on social media disparaging Smith and his California

business, with knowledge and intent to harm Smith's business reputation in California; and finally Smith alleges that he hacked into and deleted files from Smith's Dropbox account located on Smith's California computer and/or server. (*See generally*, MTD Smith Decl.).

It is clear that even if only a few of the above allegations are true (none of which are even specifically denied by Compton), then Compton intentionally directed his conduct at California, not just Smith, as the acts targeted other California residences, intended to harm Smith's California business and reputation in California, reached into and tampered with accounts known to be based in California, and allegedly even led to the involvement of California's law enforcement. *See, e.g.*, *Tresona Multimedia LLC v. Legg*, No. CV 14-02141-PHX (DGC), 2015 WL 470228, at *4 (D. Ariz. Feb. 4, 2015) ("[C]ases establishing that certain actions by an out-of-state defendant-such as publishing a libelous story about a famous California resident (*Calder*), taking extensive action to undermine a person's business (*CE Distrib.*), or directly competing with a person (*Brayton*) — create contacts with that person's forum," and are "not inconsistent with *Walden*"); *see also Gridiron Mgmt. Grp. LLC v. Wranglers*, No. CV 12-3128, 2012 WL 5187839, at *4 (D. Neb. Oct. 18, 2012) (determining that when a hacker knows or has reason to know the email account, he is hacking belongs to a person in the forum State, then the hacker should "anticipate [that] the brunt of the injury resulting from his actions would be felt in [the forum State.]"); *Info. Techs., Int'l, Inc. v. ITI of N. Fla., Inc.,* 2001 WL 1516750 *7 (N.D. Ill. 2001) ("The Individual Defendants reached across state boundaries and into Illinois by hacking into [Smith's] computer system and . . . directly contacted and instructed (or conspired to contact and instruct) [Smith's] customers, including customers in Illinois . . . [a]s a result, the Individual Defendants' actions clearly indicated an intent to affect an Illinois interest."). Therefore, the Court concludes that Smith has established a prima facie case of specific jurisdiction.

However, the Court acknowledges that given the nature of the allegations, the jurisdictional facts in this case are "intertwined with the merits of the action," which indicates that it is "preferable" that the jurisdictional issue be finally determined "at trial." *See Data Disc*, 557 F.2d at 1285 n.2; *see also Wimbeldon Fund, SPC (Class TT)*

*v. Graybox, LLC*, No. CV 15-6633-CAS (SSx), 2019 WL 2413023, at *5 (C.D. Cal. June 6, 2019) (deferring until trial, questions about personal jurisdiction because the plaintiff's claims were coextensive with the jurisdictional allegations). So, the Court will defer a final ruling on the issue until trial.

At the hearing, Compton's counsel did not specifically argue against the Court's reasoning here, which had been presented to counsel in a tentative, order, but preserved on the record the right to reraise the issue at trial.

Accordingly, the MTD is **DENIED *without prejudice***, as Compton is free to reraise the issue at trial.

## III. CONCLUSION

The Motion to Strike is **GRANTED *in part*** and **DENIED *in part***. The Court **STRIKES** paragraph 36 of the FAC as to Andrews. Both Andrew's and Smith's requests for attorney fees are **DENIED**.

The Motion to Dismiss is **DENIED *without prejudice***, as the Court will defer a final ruling until trial.

Defendants Andrews and Compton shall file their Answers to the FAC on or before **February 27, 2023**.

IT IS SO ORDERED.